(No. 71657.—

THE PEOPLE *ex rel.* HOLLY B. LeGOUT, Appellant,
v. RICKY J. DECKER, Appellee.

*Opinion filed January 30, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Jon C. Anderson, State's Attorney, of Robinson (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of Chicago, and Kenneth R. Boyle, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for appellant.

No appearance for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This case involves the applicability of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) (Ill. Rev. Stat. 1989, ch. 40, pars. 1201 through 1242). In brief, RURESA provides a mechanism by which an individual to whom a duty of support is owed (the obligee) can compel the person owing the duty (the obligor) to abide by it when absent from the jurisdiction in which the obligee resides without the obligee's having to leave that jurisdiction to obtain enforcement. Either RURESA or a predecessor uniform act, the Uniform Reciprocal Enforcement of Support Act (URESA), has been adopted in nearly all 50 states. The issue presented for review in this case is whether RURESA applies where the obligor and the ob-

ligee are residents of Illinois living in different counties and the obligee seeks to enforce a support order issued by an Illinois court. The appellate court, with one justice dissenting, held that RURESA was not applicable under those circumstances. (209 Ill. App. 3d 882.) We disagree.

Holly B. LeGout (petitioner) and Ricky J. Decker (respondent) were married in Crawford County, Illinois, on October 21, 1977. On June 27, 1980, a judgment of dissolution of marriage was entered by the circuit court of Crawford County. The court ordered the respondent to pay $150 per month to the petitioner for the support of their only child, Nicholas Blake Decker. Following the dissolution, the petitioner moved with the child to Lawrence County, Illinois.

On September 2, 1988, the petitioner filed a petition in the circuit court of Lawrence County pursuant to RURESA alleging that the respondent had not been paying child support as ordered under the terms of the judgment of dissolution of marriage. As provided for under RURESA, the petition was certified by the circuit court of Lawrence County and transferred to the circuit court of Crawford County, where the respondent resided.

A hearing on the petition was held on September 23, 1988, in the circuit court of Crawford County. As provided for in RURESA, the State's Attorney of Crawford County represented the petitioner. The respondent was represented by private counsel. Following the hearing, the court entered a stipulated order finding the respondent $2,950 in arrears in his child support payments. The court ordered the respondent to pay $200 per month in child support—$150 per month pursuant to the judgment of dissolution and $50 per month toward the arrearage.

On May 5, 1989, the respondent again was summoned to appear before the circuit court of Crawford County for failing to pay child support. On August 9, 1989, the petitioner filed an affidavit stating that the respondent was

$900 in arrears in his child support payments. On August 22, 1989, the respondent filed a motion to dismiss, claiming that the Crawford County circuit court did not have subject matter jurisdiction over the case.

Following a hearing on September 8, 1989, the court granted the respondent's motion to dismiss. The court found that it did not have subject matter jurisdiction to hear the petition for support because RURESA did not apply where the original judgment of dissolution and support order was issued by an Illinois court and where both the obligor and the obligee were Illinois residents even though they resided in different counties. The court voided all previously entered orders.

On February 28, 1991, the appellate court affirmed the trial court's dismissal of the petition. The appellate court reasoned that RURESA applies only where at least one of the following is out of State: the original judgment of dissolution and support order, the obligor or the obligee. The petitioner appealed to this court.

Section 33 of RURESA states:

> "Intrastate Application. This Act applies if both the obligee and the obligor are in this State but in different counties. If the court of the county in which the petition is filed finds that the petition sets forth facts from which it may be determined that the obligor owes a duty of support and finds that a court of another county in this State may obtain jurisdiction over the obligor or his property, the clerk of the court shall send the petition and a certification of the findings to the court of the county in which the obligor or his property is found. The clerk of the court of the county receiving these documents shall notify the prosecuting attorney of their receipt. The prosecuting attorney and the court in the county to which the copies are forwarded then shall have duties corresponding to those imposed upon them when acting for this State as a responding state." (Ill. Rev. Stat. 1989, ch. 40, par. 1233.)

According to the appellate court, the intrastate application provided for in section 33 is limited to instances where an out-of-State judgment of dissolution of marriage and support order were rendered and, thereafter, the parties moved to Illinois and resided in different counties. In support of its holding, the appellate court cited *People ex rel. Noah v. Gasik* (1980), 91 Ill. App. 3d 980, 982, in which the court stated that the primary purpose of the Act is to make it feasible for a dependant in one *State* to enforce the duty of support owed by a person residing in another *State*.

When construing a statute, courts must ascertain and give effect to the legislature's intent, and the statutory language is the best indicator of legislative intent. (*People v. Goins* (1988), 119 Ill. 2d 259, 265.) A statute must be given its plain and ordinary meaning. (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139.) There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) Further, it is improper for a court to depart from the plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. *Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363.

Section 33 of RURESA states that it applies if both the obligee and the obligor are present in this State but reside in different counties. Section 33 goes on to explain the procedure to be followed by circuit court clerks, judges and State's Attorneys in enforcing a support order intrastate. By its plain terms, the language of section 33 illustrates that the legislature contemplated intrastate as well as interstate application of RURESA. Section 33 places no exceptions, limitations or conditions upon intrastate enforcement of support orders. Specifically, it contains no

language requiring that the support order which the petitioner is seeking to enforce must have been issued by a foreign State or country. For the appellate court to have read such a restriction into section 33 constitutes the introduction of an exception, limitation or condition which clearly was not contemplated by the legislature. (See *Harvey Firemen's Association*, 75 Ill. 2d at 363.) Had the legislature intended section 33 to contain such a restriction, it could have included such a restriction. However, it did not do so.

A reading of the statute as a whole supports our conclusion that RURESA is applicable under the facts of this case. (See *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 310 (when reading a statute a court should consider each section in connection with every other part or section in determining the intent of the legislature).) Section 4 of RURESA states: "Duties of support *** bind the obligor present in this State regardless of the presence or residence of the obligee." (Ill. Rev. Stat. 1989, ch. 40, par. 1204.) Thus, it is the presence of the obligor in Illinois which enables an Illinois court to enforce against the obligor an order of support.

Section 11(b) states: "The petition may be filed in the appropriate court of any state in which the obligee resides." (Ill. Rev. Stat. 1989, ch. 40, par. 1211(b).) By its plain language, section 11 states that no matter where an obligee resides, he or she can file a petition pursuant to RURESA in order to enforce a duty of support. Finally, section 2(b) provides in part: " 'Duty of support' means a duty of support *** imposed or imposable by law or by order or judgment of any court ***." (Ill. Rev. Stat. 1989, ch. 40, par. 1202(b).) Clearly, section 2(b) contemplates the use of RURESA to enforce a support order no matter what court entered the order. Nothing in sections 4, 11 or 2(b) suggests that RURESA cannot be used under the circumstances of this case.

The public policy behind RURESA supports our construction of the Act. The purpose of RURESA is to secure support for dependent children from persons legally responsible for their support. (*Paredes v. Paredes* (1983), 118 Ill. App. 3d 27, 30; *People ex rel. Oetjen v. Oetjen* (1980), 92 Ill. App. 3d 699, 702; *People ex rel. Winger v. Young* (1979), 78 Ill. App. 3d 512, 514. See also Ill. Rev. Stat. 1989, ch. 40, par. 1201 ("The purposes of this Act are to improve and extend by reciprocal legislation the enforcement of duties of support").) In enacting RURESA, the legislature established that it is the public policy of Illinois to ensure the enforcement of support orders through all available means. (*Keeler v. Keeler* (1987), 156 Ill. App. 3d 513, 514.) It is true that an important function of RURESA is to enable a dependant living in one State to enforce a duty of support owed by an individual living in another State. However, the fundamental problem that RURESA addresses is the difficulty faced by obligees in enforcing support orders where the obligee and the obligor no longer live in the same jurisdiction. RURESA provides a mechanism by which dependants can enforce a duty of support without incurring the expense and difficulty involved in taking legal action in the jurisdiction in which the obligor lives.

In this case, the respondent failed to make court-ordered child support payments with respect to his son, Nicholas Blake Decker. The son, along with his mother, had moved to a county other than that in which the respondent resided. According to the appellate court, if the mother and son had moved to a different State, RURESA would be applicable even if the move to another State put less geographical distance between them and the respondent than the move to another county within Illinois. The public policy behind RURESA, ensuring the enforcement of support orders through all available means, would be

thwarted were we to construe the Act in such a narrow manner.

Our construction of section 33 is further supported by case law from other States that have adopted RURESA or its predecessor statute, URESA. As noted earlier in this opinion, RURESA is a uniform act. Either RURESA or URESA has been adopted by nearly all 50 States. To further the goal of uniformity in such laws, courts generally "defer to decisions of other states and will construe the statute in accordance with the construction given to the same statute in other jurisdictions." *Lake Motor Freight, Inc. v. Randy Trucking, Inc.* (1983), 118 Ill. App. 3d 626, 631-32; see also *People v. Ellis* (1984), 128 Ill. App. 3d 180, 182 (in construing an Illinois statute, decisions of other States construing similar statutes are entitled to respect and consideration).

In *Westphal v. Palmer* (Tex. Civ. App. 1972), 480 S.W.2d 277, the Texas appellate court commented:

> "It seems obvious that the legislature sought to give the act the widest and most universal application possible, even extending it to apply as between the jurisdictions within this state. *** The *** act was undoubtedly intended to be useful where the defendant moves to a new state, where both parties move to new and different states, where one or both parties move from other states to this state, *and where resident Texas parties remain in this state and locate in different jurisdictions.*" (Emphasis added.) *Westphal*, 480 S.W.2d at 280.

This language demonstrates that RURESA applies to intrastate support orders as long as the former husband and wife locate in different counties in the State. An opinion of the Colorado Supreme Court also supports that construction. In *Gonzales v. District Court* (Colo. 1981), 629 P.2d 1074, the husband and wife were divorced and a support order was issued in Denver County, Colorado. Both subsequently moved to Otero County, Colorado. At that

time, the intrastate application provision of Colorado's version of URESA provided for intrastate enforcement if "both the obligee and the obligor are in this state but in different judicial districts." (Colo. Rev. Stat. §14—5—134 (1973).) Because both resided within the same judicial district, the Colorado Supreme Court determined that URESA did not apply. The court stated that a support order entered by one State district court could be enforced by the State's other district courts under URESA. However, the court said, the intrastate provision of URESA applied only where both the obligee and the obligor were present in the State but in different judicial districts. *Gonzales*, 629 P.2d at 1076 n.2.

Clearly, had the former husband and wife in *Gonzalez* moved to different judicial districts in Colorado, URESA would have applied even though the original order of support was issued intrastate. (See also *Ray v. Ray* (Ga. 1981), 277 S.E.2d 495; *St. George v. St. George* (Minn. 1981), 304 N.W.2d 640; *Bushway v. Riendeau* (1979), 137 Vt. 455, 407 A.2d 178.) In Illinois, section 33 of RURESA provides for intrastate enforcement "if both the obligee and the obligor are in this State but in different counties." (Ill. Rev. Stat. 1989, ch. 40, par. 1233.) *Gonzalez* supports our conclusion that RURESA is applicable in the instant case where the original order of support was issued in Illinois and the parties reside in different counties.

For the above reasons, we reverse the judgment of the appellate court, affirming the circuit court's dismissal of the petition and its voiding of all orders previously entered in the cause, reverse the judgment of the circuit court, and remand this cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*